UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CASEY JANIS ET AL** | **CASE NO. 2:25-CV-00141** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **RENT-A-CENTER EAST INC ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the court are a Motion to Compel Arbitration and Motion to Stay [docs. 17, 33] filed by defendants Rent-A-Center East, Inc. and Upbound Group, Inc. (collectively, RAC). Plaintiffs Casey Janis (on behalf of his minor children), Debra Stokes, and Raymond Stokes oppose the motion in part. Doc. 19.

### I.
### BACKGROUND

This suit arises from the death of Michelle Stokes on March 20, 2024, while she was riding an e-bike in DeRidder, Louisiana. Specifically, plaintiffs allege that Ms. Stokes was hit by a truck due to the e-bike's defective throttle. Plaintiff Casey Janis brings a wrongful death claim and survival action on behalf of the minor children he shared with Ms. Stokes. Ms. Stokes's parents, who came upon the scene of their daughter's death shortly after the accident, also bring a claim for the mental anguish and emotional distress that they suffered. As defendants, they name (1) RAC, which rented the e-bike to Ms. Stokes on March 19, 2024, and allegedly taped the defective throttle rather than repairing it; (2) Venetian Worldwide, distributor of the e-bike; and (3) NAKTO, designer and manufacturer

of the e-bike. Plaintiffs assert that the e-bike was unreasonably dangerous in construction, composition, and design, as well as inadequate warning and breach of express warranty, all pursuant to the Louisiana Products Liability Act, La. R.S. 9:2800.51 *et seq.* Doc. 1.

RAC now moves to compel arbitration, pursuant to the arbitration agreement signed by Ms. Stokes on March 5, 2024, and incorporated into the rental-purchase agreement under which Ms. Stokes rented the e-bike. Doc. 33, atts. 2 & 3. Plaintiffs oppose the motion as to the wrongful death and bystander claims. Doc. 19.

## II.
## LAW & APPLICATION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that written arbitration agreements in "any maritime transaction or a contract evidencing a transaction involving commerce" "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts conduct a two-step inquiry when resolving a motion to compel arbitration under the FAA. First, the court decides whether the parties agreed to arbitrate their dispute—that is, whether (1) there is a valid agreement to arbitrate and (2) the dispute falls within the scope of that agreement. *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445–46 (5th Cir. 2001). It then looks to whether legal constraints external to the agreement foreclose arbitration. *Id.* Plaintiffs' dispute falls within the first step, as they maintain that the wrongful death and bystander claims are outside the scope of the arbitration agreement described *infra*. The court finds that the agreement otherwise sets forth a valid agreement to arbitrate and no

party has raised any external legal constraints. Accordingly, the analysis below is confined to the scope of the arbitration agreement.

The agreements at issue are a "Rental-Purchase Agreement" and "Consumer Arbitration Agreement," both signed by Ms. Stokes on March 5, 2024. Doc. 33, atts. 2 & 3. The Rental-Purchase Agreement specifies the item (500W All-Purpose E-bike) and rental terms. Doc. 33, att. 3. It further states:

> **ARBITRATION: An Arbitration Agreement comes with and is incorporated into this rental purchase agreement. We require you to sign the Arbitration Agreement as a condition for this Rental-Purchase Agreement but you may reject the Arbitration Agreement according to its [terms].**

*Id.* (emphasis in original).

The Consumer Arbitration Agreement provides, in relevant part, that it is between RAC and "the Consumer," meaning "the customers who sign this Agreement." *Id.* It broadly states:

> Except as otherwise provided in this Agreement, you and the Company agree to resolve by individual, final, and binding arbitration any and all claims or controversies, past, present, or future, that the Company may have against you or that you may have against the Company . . . .

*Id.* The agreement further provides:

> (B) What Claims Are Covered: You and the Company agree that, in the event of any covered dispute or claim between us, you and the Company agree to have that dispute or claim resolved by final and binding arbitration. This agreement to arbitrate is intended to be interpreted as broadly as the FAA allows. Claims and disputes subject to arbitration include but are not limited to:
> . . . .
> - claims that are based on any legal theory whatsoever, including negligence, breach of contract, tort, fraud, misrepresentation, trespass, the common law, or any statute, regulation, or ordinance[.]

*Id.* It also states that it may be rejected by sending a written notice via certified mail to an address in Plano, Texas. *Id.*

Based on these agreements, RAC maintains that all claims against it are governed by the agreement and that non-signatory plaintiffs are bound under the theory of direct benefit estoppel. Plaintiffs do not oppose the motion as to the survival actions. Doc. 19. They assert, however, that the bystander and wrongful death claims are not bound by the arbitration agreement because they are independent causes of action belonging to individuals who were not a party to that agreement.

Traditional principles of state law, which apply to arbitration clauses under the FAA, "allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel[.]" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Louisiana courts have recognized two types of estoppel through which a party may be bound to arbitrate under an agreement he did not sign: equitable estoppel and direct benefits estoppel. *Traders' Mart, Inc. v. ASOS, Inc.*, 268 So.3d 420, 427 (La. Ct. App. 2nd Cir. 2019). Direct benefit estoppel, as argued here, applies when non-signatories have "embraced" the contract and then seek to repudiate the arbitration clause in litigation. *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006). A non-signatory may embrace a contract either by (1) knowingly seeking and obtaining "direct benefits" from it or (2) seeking to enforce the terms of the contract or asserting

claims that must be determined by reference to it. *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010).

RAC invokes the latter method, arguing that plaintiffs have "embraced" the arbitration agreement by filing products liability claims that must be determined under the Rental-Purchase Agreement, which incorporates the Consumer Arbitration Agreement. From the complaint, however, the court cannot determine whether the Rental-Purchase Agreement has any relevance to plaintiffs' claims against RAC. Products liability claims premised on breach of an implied warranty or breach of an express warranty other than one made in the written agreement may be determined without reference to that agreement, avoiding direct benefits estoppel. *E.g.*, *Petrobras America, Inc. v. Vicinay Cadenas, S.A.*, 921 F.Supp.2d 685, 694–95 (S.D. Tex. Feb. 4, 2013); *Bracken Constr. Co., Inc. v. Liebherr-America, Inc.*, 2025 WL 511117, at *8–*9 (S.D. Miss. Feb. 14, 2025). Plaintiffs have made claims of inadequate warning and breach of express warranty against RAC, but do not specify whether they are relying on the warranty in the Rental-Purchase Agreement or some other assurances. *See* doc. 1, ¶¶ 20, 21. Accordingly, there is no basis on which the court can determine that the non-signatories must be bound to the arbitration provisions incorporated into that agreement for their own claims.

A survival action, on the other hand, is derivative of the decedent's rights. *See Walls v. Am. Optical Corp.*, 740 So.2d 1262, 1274 (La. 1999) (citing *Taylor v. Giddens*, 618 So.2d 834, 840 (La. 1993)) (distinguishing wrongful death from survival actions). Plaintiffs acknowledge under *Graves v. BP America, Inc.*, 568 F.3d 211, 222 (5th Cir. 2009), in which the Fifth Circuit compelled arbitration for a survival claim because it was

"wholly derivative" of the decedent/signatory's rights, that the survival claims in this matter are likewise subject to the arbitration provisions incorporated into the Rental-Purchase Agreement. The motion to compel arbitration will thus be granted as to the survival claim but denied as to the wrongful death and bystander causes of action. Under § 3 of the FAA, "if a claim in a lawsuit is 'referrable to arbitration under an [arbitration] agreement,' the district court 'shall on application of one of the parties stay the trial of the action' pending arbitration." *Cure & Assocs., P.C. v. LPL Fin. LLC*, 118 F.4th 663, 671 (5th Cir. 2024) (citing 9 U.S.C. § 3). The motion to stay will also be granted.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Motion to Compel [docs. 17, 33] be **GRANTED** as to the survival action and **DENIED** as to all other claims. Accordingly, plaintiffs are hereby **ORDERED** to submit to arbitration on the survival action against RAC in accordance with the terms of Consumer Arbitration Agreement. **IT IS FURTHER ORDERED** that the Motion to Stay [docs. 17, 33] be **GRANTED** and that all proceedings in this matter be **STAYED** until the conclusion of arbitration.

**THUS DONE AND SIGNED** in Chambers on the 6th day of June, 2025.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE